UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff, | §<br>§<br>§ | |
| v. | §<br>§ | CRIMINAL ACTION NO. 4:07-CR-00466 |
| TEXAS OIL AND GATHERING, INC.;<br>JOHN KESSEL; and<br>EDGAR PETTIJOHN, | §<br>§<br>§<br>§ | |
| Defendants. | §<br>§<br>§ | |

MEMORANDUM AND ORDER

Before the Court is Defendants' Motion to Exclude, jointly filed by Texas Oil and Gathering, Inc. ("Texas Oil and Gathering"), John Kessel, and Edgar Pettijohn. (Doc. No. 82.) After reviewing the parties' arguments and the relevant law, the Court finds that Defendants' Motion to Exclude should be denied.

I.    ANALYSIS

A. Testimony of Timothy Sanders and Diane Gregg

Defendants have been indicted for violating the Resource Conservation and Recovery Act ("RCRA"), which prohibits the unauthorized disposal of hazardous waste. 42 U.S.C. § 6925(a). RCRA classifies material as "hazardous" based on certain properties, including ignitability. 40 C.F.R. §§ 260.20-21. Specifically, "a solid waste exhibits the characteristic of ignitability if a representative sample of the waste ... has a flash point less than 60 [degrees Celsius]." 40 C.F.R. § 261.21. RCRA regulations define a "representative sample" as "a sample of a universe or whole (e.g., waste pile, lagoon, groundwater) which can be expected to exhibit the average properties of the universe or whole." 40 C.F.R. § 260.10.

The indictment alleges that Defendants, without a permit, disposed of waste that had a flashpoint below 60 degrees Celsius. (Indictment, ¶¶ 37-41.) As proof, the Government seeks to introduce samples of the allegedly hazardous waste and the expert testimony of Timothy Sanders, an EPA chemist, and Diane Gregg, the Organic Team Leader and Lead Chemist at the EPA Region Six laboratory. The samples were collected by Leroy Herzberg, a former driver for Texas Oil and Gathering who worked as an informant for the Government. Sanders flash tested the samples of waste to determine the materials' ignitability. (Doc. No. 82, Ex. A.) Sanders will testify that the flashpoint of the material Herzberg collected was below 60 degrees Celsius. (*Id.*) Gregg will testify that Sanders tested the samples in accordance with EPA guidelines and internal lab standards, that the results were properly recorded, and that the results are scientifically valid. (Doc. No. 82, Ex. B.) Defendants seek to exclude the samples collected by Herzberg and the expert testimony of Sanders and Gregg.

The Government admits that Herzberg did not comply with the EPA's own sampling and storage techniques when he collected the samples of the allegedly hazardous waste. As a result, Defendants contend that Sanders did not use "reliable or representative samples" in his testing or in forming his conclusion that the material had a flashpoint below 60 degrees Celsius. Defendants further argue that, had the tested samples been representative, they might have been exculpatory. Finally, Defendants claim that Sanders' conclusions do not approach "the level of scientific rigor required under *Daubert* because the underlying samples were unreliable."

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an

opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. FED. R. EVID. 702. The requirement that the testimony "assist the trier of fact" means the evidence must be relevant. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993); *Mathis v. Exxon Corp.*, 302 F.3d 448, 460 (5th Cir. 2002). In evaluating the admissibility of expert testimony, the court should "make certain that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999); *Hodges v. Mack Trucks Inc.*, 474 F.3d 188, 194 (5th Cir. 2006). While the *Daubert* factors are particularly helpful in assessing scientific testimony, the proper factors depend on the nature of the issue, the particular expertise, and the subject of the testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 136, 152 (1999).[1] The court must bear in mind the purpose of the testimony when addressing its reliability. *Mathis v. Exxon Corp.* 302 F.3d 448, 460 (5th Cir. 2002).

Defendants do not challenge the validity or the accuracy of the methods Sanders used to test the materials and reach his conclusions; their attack is limited to Herzberg's failure to comply with EPA protocol while collecting the samples.   The Government claims that any errors Herzberg committed in collecting the samples should go to the samples' evidentiary weight, not the admissibility of the samples or the expert testimony.

---

[1] The *Daubert* factors include (1) whether the expert's technique can be or has been tested; (2) whether the method has been subjected to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community. *Daubert,* 509 U.S. at 593-94.

In support of its position, the Government cites *United States v. WCI Steel*, 72 F.Supp. 810 (N.D. Ohio 1999), a case in which the defendant steelmaker challenged the admissibility of wastewater that was not collected in accordance with EPA regulations. The district court concluded that, while sampling conducted in compliance with EPA standards is preferred, "reliability and accuracy of samples may be shown by methods other than [EPA protocol]." *WCI Steel*, 72 F.Supp. at 823. The district court further concluded that the failure to adhere rigidly to EPA protocol did not render the sampling inadmissible. *Id.* at 824. "Any deviation from the guidance goes to the weight of the evidence and not its admissibility." *Id.* (citation omitted).

Other courts have come to similar conclusions in the criminal context. With respect to DNA testing, several circuits have held that arguments concerning errors in the lab procedures are relevant to the weight of the evidence, but not its admissibility. *United States v. Hicks*, 103 F.3d 837, 846 (9th Cir. 1996) *overruled on other grounds by United States. v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008); *United States v. Chischilly*, 30 F.3d 1144, 1153-54 (9th Cir. 1994); *United States v. Jakobetz*, 955 F.2d 786, 800 (2d Cir. 1992); *United States v. Beasley*, 102 F.3d 1440, 1448 (8th Cir. 1996); *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 858 (3d Cir.1990), *cert. denied*, 499 U.S. 961 (1991). The Court will not exclude the samples or expert testimony of Sanders and Gregg because of Herzberg's failure to follow EPA procedure. On cross-examination, Defendants will be free to question the impact of Herzberg's methods on the samples' flash point.

**B. Chain of Custody**

Defendants also argue that the samples should be excluded because the Government has not properly established the chain of custody of the evidence. It is well settled that

- 4 -

defects in the chain of custody go to the weight of evidence, not its admissibility. *United States v. Hinojosa*, 287 Fed.Appx. 318 (5th Cir. 2008) (not designated for publication) (citing *United States v. Dixon*, 132 F.3d 192, 197 (5th Cir. 1997); *United States v. Sparks*, 2 F.3d 574 (5th Cir. 1993)).

At oral argument, Defendants directed the Court's attention to *United States v. Baker*, 538 F.3d 324 (5th Cir. 2008). In *Baker*, the defendant was on trial for child pornography. The sole authenticator of the images Baker purportedly uploaded to the Internet had no personal knowledge of the images and based his statements entirely on conversations he had had with other law enforcement officials. The Fifth Circuit held that it was reversible error for the District Court to allow the images into evidence without a competent supporting witness. Defendants have not demonstrated similar defects in the chain of custody of the samples. It is very likely that the Government witnesses at trial will be able to authenticate the materials—the Court has received no indication to the contrary.

### C. Testimony of Gil Bujano

Gil Bujano, Assistant District Director of the Oil and Gas Division of the Railroad Commission of Texas, will testify that the waste generated by TOG did not constitute oil and gas production waste and, therefore, could not be legally dumped at the BLSR. (Doc. No. 82, Ex. A.) Defendants argue that his testimony should be excluded because he will be drawing legal conclusions.

The Government claims that Bujano will testify about the TRC's regulations on Class II injection wells and the permit system for the wells, how the wells are constructed, and what types of materials can be disposed of in the wells, including BSLR. He will testify about the contents of oil and gas waste, and that, in his opinion, the TOG waste did not constitute oil

and gas production waste that can legally be disposed of at BSLR. The Court will not prevent Bujano from testifying on these topics. Defendants will be allowed to object at trial if the Government prompts Bujano to draw improper legal conclusions.

## II.    CONCLUSION

Defendants' Motion to Exclude is **DENIED.** The Court will not hold a further hearing on the Motion.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 31st day of March, 2009.


_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**